IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A SPRINT APPLE IPHONE IMEI: 355412079772933 ("Device 1"); A VERIZON APPLE IPHONE IMEI: 352022077899936 ("Device 2"); A SAMSUNG Model: SM-B311V-UD MEID: A00000477D8A1E, ("Device 3"), in the custody of the DEA Chattanooga Office | Case No. 1:18-mj-11 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH AND SEIZE

I, Shane Dockery, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – an electronic device, to wit, three cellular telephones currently in law enforcement possession – and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Officer (TFO) with the Drug Enforcement Administration ("DEA"), United States Department of Justice. As such, I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) and empowered by law to conduct investigations of, among other things, offenses enumerated in Title 21, United States Code, Section 841. I have been a TFO since February of 2016 and employed as a Police Officer with the Red Bank Police Department since May of 2004. Prior to

Page 1 of 12

Case 1:18-mj-00011-CHS   Document 3   Filed 02/12/18   Page 1 of 15   PageID #: 3

my current assignment as a TFO, I was Narcotics Detective for the Red Bank Police Department.

3. In connection with my official TFO duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848. I have also been involved in various types of wire and electronic surveillance, and in the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking, and of the laundering and concealing of proceeds of drug trafficking, for the past 12 years. I have received countless hours of specialized training in the enforcement of laws concerning the activities of narcotics traffickers. My current assignment involves investigations of high-level drug trafficking organizations in east Tennessee, north Georgia, and elsewhere.

4. As a result of my experience and training, I am aware that it is common for drug traffickers to utilize cellular telephones and other portable electronic devices to communicate about their drug trafficking activities. In a number of investigations in which I been involved, these devices have also been found to function as a computer whereas a subject can access the internet, e-mail servers, social media sites, and other mobile applications which are frequently used to communicate with their sources of supply, customers, and other co-conspirators. These devices also typically contain other data relevant to criminal activity to include GPS and mapping data, photographs, and contact lists.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched is as follows: 1. Boost/Sprint Apple IPHONE, IMEI: 355412079772933, hereinafter "Device 1." 2. Track Phone Wireless/Verizon Apple IPHONE, IMEI: 352022077899936, hereinafter "Device 2." 3. Verizon Samsung MEID A00000477D8A1E, Model: SM-B311V-UD, hereinafter "Device 3." Devices 1, 2 and 3 are currently in DEA's possession and are being temporarily stored at the DEA Chattanooga Resident Office, 5751 Uptain Road, Ste 417, Chattanooga, Tennessee. These devices are more specifically described in Attachment A.

7. The applied-for warrant would authorize the forensic examination of Devices 1, 2, and 3 for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8. In the beginning of 2017, multiple agencies including the DEA, Lookout Mountain Drug Task Force, TBI, East Ridge Police Department and Hamilton County Sheriff's Office, have been investigating numerous subjects responsible for distributing kilogram amounts of methamphetamine/ICE in the Eastern District of Tennessee (EDTN) and North Georgia. The EDTN includes but is not limited to Hamilton County, and the cities of Chattanooga, Red Bank, and East Ridge.

9. During the investigation, Daniel CHADWICK was named as a source of supply of kilogram quantities of methamphetamine/ICE and pounds of marijuana, which were being distributed throughout the EDTN and North Georgia. This information was learned through

Page 3 of 12

Case 1:18-mj-00011-CHS   Document 3   Filed 02/12/18   Page 3 of 15   PageID #: 5

multiple avenues including but not limited to a Title III wiretap case, arrestee interviews, CS interviews, and proffered interviews.

10. On January 12, 2018, your affiant and other members of the Chattanooga Resident Office were conducting physical surveillance of Daniel CHADWICK and saw him travel. CHADWICK was subsequently stopped and arrested by Chattanooga Police on an outstanding probation violation warrant out of Georgia. When officers opened the vehicle door and had CHADWICK exit the vehicle, I observed in plain view a pill bottle with no label containing 10 yellow pills believed to be Xanax laying in the driver seat, U.S. Currency laying partially under the driver seat, one black IPhone in the cup holder (Device 1), one IPhone in a grey and white case laying in the driver floor board (Device 2) and a silver in color Rolex watch in the passenger seat. CHADWICK was then searched by Chattanooga Police and was found to be in possession of a large sum of U.S Currency, papers that appeared to be drug ledgers, and a black cell phone (Device 3).

11. CHADWICK was taken to the DEA Office for questioning and placed into a temporary holding cell. Your affiant asked CHADWICK for his home address and he stated he didn't have one. I then asked for a mailing address and he gave his mother's. Once I completed the seizure paperwork, I explained the notice of seizure of $11,195 in U.S Currency, and the Rolex watch found on his person and in the vehicle at the time of stop. CHADWICK refused to sign both notices of seizures and never offered an explanation on how he obtained the seized property. At no point during the search of his person or car did investigators find any receipts, tax return, employment check stubs, or bills of sale that would show where or how he obtained the seized property.

12. Prior to CHADWICK being transport to the Hamilton County Jail, your affiant

showed CHADWICK all three cell phones found at the time of his arrest and CHADWICK denied possession or ownership of any of the phones, including the one found on his person.

13. Based on the above-described facts, your Affiant believes that Daniel CHADWICK is a significant distributor of methamphetamine in the Eastern District of Tennessee. Your Affiant believes that Devices 1, 2, and 3 will contain evidence of Drug trafficking.

14. On January 12, 2018, agents of the DEA Chattanooga Resident Office took temporary custody of Devices 1, 2, and 3. Devices 1, 2, and 3 are currently in the lawful possession of the DEA. As described above, Devices 1, 2, and 3 came into DEA's possession subsequent to the arrest of Daniel CHADWICK .

15. Devices 1, 2, and 3 are still being stored at the DEA Chattanooga Resident Office's temporary non-drug evidence locker. Based on my training and experience, I know that the Devices 1, 2, and 3 have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when Device 1, 2, and 3 came into the possession of the DEA.

## TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of

transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online, I believe that Devices 1, 2, and 3 have capabilities that allows each of them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and/or PDA. Devices 1, 2, and 3 also have Internet capabilities. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how Devices 1, 2, and 3 were used, the purpose of their use, who used it, and when. There is

probable cause to believe that this forensic electronic evidence might be on Devices 1, 2, and 3 because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

Page **10** of **12**

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

21. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

22. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of Devices 1, 2, and 3 (as described in Attachment A) to seek the items described in Attachment B.

23. I respectfully request that, on its return, this search warrant – as well as the related application, all attachments, and this affidavit – be filed under seal. Execution of this search warrant may yield evidence that is material to an ongoing investigation of a target (i.e., CHADWICK) whom DEA believes to be involved in the trafficking of substantial quantities of narcotics in and around the Eastern District of Tennessee. Providing immediate notice of this

search warrant or disclosing facts set forth herein would seriously jeopardize an ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior. It may also jeopardize the safety of cooperators and confidential sources involved in the investigation.

24. In accordance with Title 18, United States Code, Section 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request delayed notification of the warrant for 30 days, i.e., until March 14, 2018. Such delay will allow law enforcement officers to use additional means to further investigate without jeopardizing the integrity of its ongoing investigation or any person's safety. For the reasons stated herein, I respectfully submit that there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in Title 18, United States Code, Section 2705.

Respectfully submitted,

Shane Dockery
DEA Task Force Officer

Subscribed and sworn to before me
on February 9, 2018:

HON. CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

1:18-mj-11

## ATTACHMENT A

The property to be searched is a black colored Boost Apple I-phone cellular telephone, IMEI number: 355412079772933, hereinafter "Device 1," a white and grey colored Verizon Apple I-phone cellular telephone, IMEI:352022077899936, hereinafter "Device 2," a black Samsung cellular telephone, Model number SM-B311V-UD, MEID: A00000477D8A1E, hereinafter "Device 3." Device 1, Device 2, and Device 3 are currently in the DEA's possession and are being stored at 5751 Uptain Road, Suite 417, Chattanooga, Tennessee.

This warrant authorizes the forensic examination of Device 1, Device 2, and Device 3 for the purpose of identifying the electronically stored information described in Attachment B.

Page 1 of 1

## ATTACHMENT B

1. All records on Device 1, Device 2, and Device 3 described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A) and involve Daniel CHADWICK, including:

   a. Lists of customers and related identifying information;

   b. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. All bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned Device 1, Device 2, and Device 3 at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, and passwords.

3. Records evidencing the use of the Internet Protocol address to communicate with computers on the internet, including:

   a. Records of Internet Protocol addresses used:

   b. Records of Internet activity, including firewall logs, cache, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.